## HARRIS v. SCHOOL DISTRICT No. 10 IN CANAAN.

The building committee of a school district have no power to bind the district beyond the amount of the money voted by the district.

The members of such committee, performing services and furnishing materials severally, under the directions of the committee, have several and not joint claims against the district.

Seven days notice only of the annual meeting of a school district is required in any case.

Records and returns relating to the meetings of school districts may be amended like those of towns.

ASSUMPSIT, for labor and materials done and furnished, for the repair of the school house of district No. 10 in Canaan. The defence was, that the repairs were not made by the authority of the district.

It appeared that on the 10th of March, 1851, Dexter Harris was prudential committee of the district. On that day he issued his warrant under seal, addressed to the legal voters of the district, notifying them to meet on the 24th, among other articles, " to choose other necessary officers for the ensuing year; to see if the district will repair the present school house, and raise money therefor."

Upon this warrant was the following return : " I certify that a copy of the above warrant was legally posted up by me ; Dexter Harris, Committee."

At the meeting held in pursuance of this warrant, it was " voted to repair the present school house." " Voted to choose a committee of three to repair said school house." " Voted to raise twenty-five dollars to repair school house." " Voted that Dexter Harris, Daniel Pattee and Sylvester Jones, be the committee to repair school house." " Voted to adjourn."

At the adjournment, " Voted to accept all bills of lumber, brick, mortar, window and pipe."

January 9, 1852.—A meeting was duly called to be held January 19, among other things, " to choose an agent to collect the money from the treasurer, raised in said district for the repair of the school house in said district the past year." " To settle with said committee, that was chosen to repair said house, and to see what method the district will take to make up the delinquent part of money expended on said house."

At the meeting thus called, it was " voted to choose an agent to collect the money raised for the repair of the school house." " Voted that James Pattee be the agent." " Voted to instruct the agent to pay all bills for the materials for

the repair of said school house, and divide the rest of the money raised equal, according to the days work done."

It appeared in proof that at the district meeting in March, the plaintiff was present, and there was a conversation as to the amount of repairs required, and the expense of them, before any vote was passed, and evidence was offered of what was said by the plaintiff in the school meeting as to the amount of the repairs needed on the school house, and the expense of them, as tending to show that certain repairs were agreed to be made by the meeting informally, of less amount than the money voted, and that the meeting adjourned to see what should be done with the balance of the money, and that the expense of repairs beyond the amount of twenty-five dollars was for repairs not so agreed on. This evidence was objected to, and held inadmissible, to which the defendants excepted.

It appeared that the repairs made were made with the concurrence of the whole of the committee, but the work was done by the members of the committee severally, and that each furnished such materials as were necessary for the work done by him, and charged them in his individual account. It was not objected, that any of the repairs made were in themselves unsuitable, or improper to be made.

Of the plaintiff's account $7 was for services, and the balance, $9,48, was for materials.

It was objected by the defendants, that the plaintiff and the other persons had no authority, as a committee, to bind the district, inasmuch as the meeting was not properly called, the date of the warrant being " March 10th, and the meeting March 24, and the return on the warrant insufficient."

To obviate this objection, leave was granted to the prudential committee to amend his return, so as to show the day on which the warrant was posted, which was the day of its date. The amendment to be made upon the original return, if to be found, otherwise upon a copy from the clerk's

record, and the like leave to the clerk of the district to amend his record of the return agreeably to such amendment.

To this order the defendants excepted, and the order was made subject to the exception.

It was objected, that if the meeting was valid, the committee had no authority but to receive and expend the money voted for repairs, no power to bind the district by any contract, or if by any, not beyond the amount voted; that their authority was joint, and no separate action could be maintained by either, and that no joint demand for the money was shown.

A verdict was taken for the plaintiff, by direction of the court, subject to the opinion of the superior court upon the questions raised by the case.

*Kittridge*, for the plaintiff.

*H. A. Bellows*, for the defendants.

BELL, J. The questions arising in this case are of interest, as they are calculated to settle in some degree the powers of school districts, and their officers. These little corporations have sprung into existence within a few years, under a system of legislation of very doubtful expediency, and their corporate powers, and those of their officers, are to be settled by the constructions of the courts, upon a succession of crude, unconnected, and often experimental enactments.

The general powers of these bodies, and of their officers, as far as they relate to the subject of this suit, and have been prescribed by statute, are found in the first section of chapter 71 of the Revised Statutes.

" At any meeting legally holden for the purpose, any district may vote to build, purchase, repair, alter or remove a school house in and for such district, and other necessary

Harris *v.* School District No. 10 in Canaan.

buildings therefor, and to furnish the same with all neces-
sary apparatus and furniture, for the use of the school
therein, may decide upon the location thereof, and purchase
land therefor, * * may choose committees, with powers
to carry said votes into effect, and may raise money there-
for."

Under these powers, the defendants voted " to repair the
present school house;" " to choose a committee of three to
repair said school house;" " to raise twenty-five dollars to
repair school house;" and chose the plaintiff and two oth-
ers " the committee to repair the school house."

This committee repaired the school house, at an expense
exceeding twenty-five dollars, and now call upon the dis-
trict, by this suit, to pay the increased amount. Have they
the power to bind the district to pay these bills? School
districts are *quasi* corporations of the most limited powers
known to the laws. They have no powers derived from
usage; their existence extending back but a few years.
They have the powers expressly granted them, and such im-
plied powers as are necessary to enable them to perform
their duties, and no more. Among these are the power to
vote money for specified purposes, and the power to appoint
committees to carry their votes relative to those purposes
into effect. The district may clearly, by their votes for
building and repairing school houses, limit the expense to a
definite sum; and they may limit the precise repairs, or the
exact description of the school house to be built, and it
seems very clear, that no committee can bind the district by
exceeding those limits.

In terms, here, the district have imposed no limit to the
repairs, and no limit to the powers of the committee. Is,
then, a limit implied by the vote to raise money to a limited
amount? In the nature of the case, a discretion must be
vested somewhere, as to the money to be raised for building
and repairing school houses. The question is, if that is
vested in the district, or in the committee, or in both; and

we think it very clear, that by the terms, as well as by the general policy of the law, this discretion is vested in the district alone.

Towns have power to raise money to defray the necessary charges of the town, but it is well settled that this is a power which cannot be transferred. It cannot be vested in a committee. *Gove* v. *Lovering*, 3 N. H. Rep. 292. Districts, too, may raise money, but their power cannot be delegated for the same reason which limits the powers of towns. To make this rule in any degree effectual, it is necessary to hold that the powers of all committees appointed by a district are limited by the amount of money the district have voted to raise; otherwise the discretion as to the amount of money to be expended, is absolutely vested in the committee. The committee can pass no votes to raise money, but if their power is unrestricted, they may contract debts, which the district may be compelled to raise money to pay. We cannot believe that it was the intention of the legislature to give such powers to any committee. It is directly against the general policy of the law, that taxes are to be voted by those who have them to pay, and not by those who are to expend them.

Selectmen of towns stand on very different grounds from the building committees of school districts. They are the general agents of towns for managing their prudential affairs, which are various, and sometimes complicated, and require a discretionary power to be vested in the agents, who have them to manage; and yet their power to contract debts, by which the town shall be bound, is kept within very narrow limits. *Underhill* v. *Gibson*, 2 N. H. Rep. 352; *Andover* v. *Grafton*, 7 N. H. Rep. 300.

These committees to build and repair school houses, are special agents, without any general powers over the affairs of the district, and their powers are confined to a special purpose; and no inference can be drawn from the general nature of their powers. The liability of such powers to

abuse, if the committees should be deemed to possess them, seems to furnish the strongest argument against their existence. In most districts, upon the question of building or repairing school houses, the people differ in their opinions, as to the proper measure of expense; and it is obvious that if slight repairs alone were required, in the judgment of the district, and a small sum voted to be raised, the advocates of a large expenditure could always accomplish their purposes, if they could obtain the appointment of a committee whose powers were not expressly limited; and a district might find themselves loaded with large debts, contracted for purposes of which they entirely disapproved.

Upon the votes of this district, we think a reasonable construction would deduce the same limitation. These votes are not to be construed separately, but in connection with each other, as being passed at the same time, on the same subject. It is entirely immaterial in what part of an instrument the several provisions to be considered are to be found, the whole is to be considered together, and this principle appears equally applicable to the votes passed at a corporate meeting; all which relate to the same subject are to be construed together, and we think no one can doubt that the intention of the district, in this case, was to authorize repairs to be made, to the amount of the money they voted to raise, and no more. This seems to us as evident as it would if the votes had been expressly to repair the school house to the amount of twenty-five dollars. Entertaining this view of the powers of the district, and of its committees, we regard the debts attempted to be imposed on the district by the committee, as entirely unauthorized, beyond the amount of the sum voted.

This expenditure, though unauthorized, was beneficial to the district. "It was not objected, that any of the repairs made were in themselves unsuitable, or improper to be made," but it is not in the power of any one, without au-

thority, to do acts beneficial to another, and charge him with the expense.

But this would furnish a good reason for the district to approve and ratify the claim, and this it is contended the district has done. If such ratification appears, the claim cannot be resisted on account of the want of previous authority. *Ratificatio mandato equiparatur.*

The ratification relied upon, was the vote " to accept all bills of lumber, brick, mortar, window and pipe;" and the vote " to instruct the agent to pay all bills for the materials for the repair of the school house, and divide the rest of the money equal, according to the days work done." The district had the right to approve the services performed, and to pay the bills exceeding the sum voted, either in part or in all, and they are bound so far as they agree, and no farther. By these votes they agree to pay the bills for materials in full. They had no power to change the liability already rightfully incurred by the committee, nor to reduce the claims of those who had performed services under the authority of the committee. As the case stands, then, unaffected by the subsequent votes, the claims were all alike authorized by the committee, and no preference of any as to time appears. Each, then, was authorized, so far as the money was voted, and unauthorized beyond that. The twenty-five dollars voted, was then to be divided among these claimants, in proportion to their whole bills; that is, in proportion to their whole claims for labor and materials. If the proportion allowable for materials, on this principle, does not pay the whole of that charge, the balance of those items is then to be added to the amount allowed from the twenty-five dollars.

As the verdict was taken for the whole bill, a new trial must be granted for this cause, unless the excess is remitted.

Some exceptions were taken on the trial, which require consideration. Evidence was offered of what was said in the district meeting, as to the amount of repairs to be

made, as tending to show that certain repairs were agreed upon informally by the meeting, but the evidence was rejected. We think there would be no safety in inferring from the discussions in a town or district meeting, what was agreed to be done. The only evidence of the proceedings of such meetings are their votes. Cush. Man. 14, 233. This exception must therefore be overruled.

Exception was taken to the order of the court, authorizing an amendment of the return of notice of the meeting, and of the record of the return. The power of the court to permit amendments of official returns, and of the records, agreeably to the facts, as shown to the court, is now too well settled to admit of any question. *Gibson* v. *Bailey*, 9 N. H. Rep. 168; *Low* v. *Pettengill*, 12 N. H. Rep. 340; *Whittier* v. *Varney*, 10 N. H. Rep. 291.

We perceive no ground upon which a substantial distinction can be based between the amendment of such records and the amendment of those relating to school meetings. As, however, we deem the amendment immaterial, it is not necessary to pursue this inquiry.

The objection proposed to be obviated by the amendment was that the notice for the district meeting, held March 24, 1851, was insufficient, the warrant being dated on the 10th, for a meeting on the 24th, which, it is said, is insufficient, even if the return should be amended, so as to show the service on the day of its date. The answer made to this objection by the plaintiffs, is that the meeting in question was the annual meeting of the district, and that seven days notice only is required for the annual meeting. We have examined the sections of the statute of 1845, chap. 225, (sec. 1 and 2,) on the construction of which this question depends, and it seems to us to admit of no doubt. The first section relates exclusively to annual meetings, and requires seven days notice, and no more. The second section relates to special meetings alone. " Special meetings may be called at any time, in the same manner, except for rais-

ing money, or building or repairing school houses, in which cases an attested copy of the warrant issued, shall be posted up fifteen days," &c. This must be confined to special meetings. None others are named or referred to.

It was also objected, that the action should have been joint by all the members of the committee. But we think, upon the evidence, there was no joint claim. What was done and furnished by each, was done by himself alone, unconnected with the others, though done by the authority of the whole; and each must recover upon his own claim. If the committee had paid these claims, they would have had a joint claim for the whole, so far as that was author-ized by the district. That was not done in this case.